IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| YASSER ALHAMZAWI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:15-CV-3295-K |
| | § | |
| GEICO CASUALTY COMPANY, | § | |
| | § | |
| Defendant. | § | |

# MEMORANDUM OPINION AND ORDER

Before the Court are: (1) Defendant's Motion for Summary Judgment (Doc. No. 26); and (2) Plaintiff's Motion to Dismiss Defendant's Counter Claims Under Federal Rules of Civil Procedure 9(b) and 12(b)(6) (Doc. No. 44). After careful consider of the motions, the responses, the replies, the supporting appendices, the applicable law, and any relevant portions of the record, the Court (1) **GRANTS in part and DENIES in part** Defendant's motion for summary judgment and (2) **DENIES** Plaintiff's motion to dismiss Defendant's counterclaims. For the following reasons, the Court finds there is no genuine issue of material fact as to Plaintiff's extra-contractual claims against Defendant for breach of good faith and fair dealing and violations of the Texas Insurance Code and Deceptive Trade Practices Act.

Defendant is, therefore, entitled to summary judgment as a matter of law on these claims.

## I. Factual and Procedural Background

Defendant GEICO Casualty Company ("Defendant") issued an automobile insurance policy ("Policy") to Plaintiff Yasser Alhamzawi ("Plaintiff") which insured Plaintiff's 2000 Bentley Arnage ("vehicle"). This Policy indemnified Plaintiff for loss and damages to his vehicle during the Policy period. On or around April 3, 2014, Plaintiff was driving his vehicle when a hail storm began ("Hail Storm"). The Policy was in effect on this date. On April 4, 2014, Plaintiff submitted a claim for damage to his vehicle during Hail Storm. On April 8, 2014, an adjuster for Defendant inspected Plaintiff's vehicle and provided an estimate of $5,818.19 for repairs. On April 8 and 16, 2016, Defendant issued two checks to Plaintiff for the repairs totaling $5,718.19 (less Plaintiff's $100.00 deductible), and Plaintiff cashed both checks.

Plaintiff believed Defendant's estimate was too low, and procured additional written estimates from three independent collision repair centers between April 8-9, 2014. These estimates were significantly higher than Defendant's: (1) Park Place Bodywerks, $31,412.89; (2) Ewing Body Shop, $32,801.99; and (3) Trade Secret Auto Care, $26,378.49. On April 10, 2014, Plaintiff also secured a written estimate from Tulsa Investment, a company owned by his brother, Mr. David Kennedy, but

that is not a repair or body shop. The estimate from Tulsa Investment was $30,500 for repairs. Plaintiff chose to have his brother repair the vehicle, presumably at Mr. Kennedy's shop in Tulsa, Oklahoma. That same day, April 10, Mr. Kennedy accompanied Plaintiff to his bank where he gave Mr. Kennedy a cashier's check for $15,250 as a repair deposit. Mr. Kennedy immediately attempted to cash the check while they were still at the bank, but was unable to do so. Plaintiff took back the cashier's check and paid Mr. Kennedy with cash. Also that same day, Mr. Kennedy and another man named Carlos picked up the vehicle to begin making repairs.

Plaintiff retained an attorney, Mr. Tim Robinson, to assist him on this claim he filed with Defendant. On April 23, 2014, Mr. Robinson (who is not an attorney of record in this case) sent Defendant a letter demanding payment of $30,500 (less any money already paid under the Policy) based on an invoice, which contained no details or itemization, from Mr. Kennedy for repairs. This letter also contained the three written estimates Plaintiff received from the independent repair shops. On May 7, 2014, Defendant responded to Mr. Robinson in a letter which explained Defendant's policy regarding repair costs exceeding Defendant's estimate. Specifically, Defendant instructed Mr. Robinson that if Defendant's estimate was insufficient to cover repair costs due to damage covered under the Policy, the body shop itself needed to contact Defendant for a supplement via email or fax. On May

20, 2014, Mr. Robinson sent another letter to Defendant, stating that he was submitting a supplement to Defendant in this letter because "this body shop does not often deal with insurance companies". The letter contained the Supplemental Request Form and the Repair Order from Tulsa Investment. This Repair Order contained the detailed and itemized repairs and costs. The Repair Order also noted that all work and repairs had been completed and the vehicle returned to Plaintiff, and the entire amount of $30,500 had been paid in full.

After receiving that Repair Order, Defendant sent a reservation of rights letter to Plaintiff on May 28, 2014. The letter explained an investigation had begun into Plaintiff's possible failure to comply with his Policy terms by not allowing Defendant to re-inspect the vehicle and approve any additional supplements or repairs before Plaintiff authorized Mr. Kennedy to make those additional repairs. On May 29, 2014, Defendant sent another letter to Plaintiff acknowledging receipt of Plaintiff's May 20 letter which demanded payment of the additional repair costs, and informing Plaintiff that Defendant must complete its investigation before any additional payments would be considered. On June 20, 2014, Mr. Robinson sent a demand letter to Defendant for $36,500.00, alleging Defendant had violated various state statutes. Defendant responded in a letter dated June 24, 2014, stating that Plaintiff's demand offer could not be accepted or rejected until the investigation was complete.

Defendant also informed Plaintiff that he would be required to submit to an Examination Under Oath ("EUO"). Plaintiff's EUO took place on October 30, 2014.

After completing the investigation, Defendant ultimately denied "any and all liability and obligation" under the Policy in a letter dated April 7, 2015. Specifically, Defendant cited a provision within the Policy requiring Plaintiff's cooperation in the investigation, and noted that Plaintiff had failed to produce material information to the investigation; therefore, Plaintiff's claim was denied.

On September 11, 2015, Plaintiff filed the instant suit in state court asserting claims against Defendant for breach of contract, violations of the Texas Insurance Code, violations of the Texas Deceptive Trade Practices Act, and breach of duty of good faith and fair dealing. Defendant removed the case to this Court on October 13, 2016 on the basis of diversity.

## II.     Summary Judgment Standard

Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute of a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant, and all disputed facts resolved in favor of the nonmovant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Boudreaux v. Swift Transp. Co.*, Inc.., 402 F.3d 536, 540 (5th Cir. 2005).

The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 322-25. "Even if there is a dispute regarding some material facts, a movant may obtain summary judgment if he can prove there is no evidence to support one or more essential elements of the non-moving party's claim." *Walker v. Geithner*, 400 F. Appx. 914, 916 (5th Cir. 2010)(per curium)(citing *Celotex*, 477 U.S. at 323-25). However, "[i]t is not sufficient to merely list the elements of the claims and state that there is no evidence to support the elements." *Seastruck v. Darwell Integrated Tech.*, Civ. No. 3:05-CV-0531-BF, 2008 WL 190316, at *3 (N.D. Tex. Jan. 22, 2008)(Stickney, M.J.). The movant must cite to the record to demonstrate a lack of evidence that supports the nonmovant's claims. *Id.*

Once the movant satisfies his burden, the nonmovant must present competent summary judgment evidence showing a genuine fact issue for trial exists. *Id.* at 321-25; *Anderson*, 477 U.S. at 255-57. To meet this burden, the nonmovant may not rest on the pleadings, but must designate specific facts in the record establishing a

genuine issue of material fact exists. *Celotex*, 477 U.S. at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc). The nonmovant may satisfy this burden by providing depositions, affidavits, and other competent evidence; not with "conclusory allegations, speculation, and unsubstantiated assertions." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence cannot defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-52; *Boudreaux*, 402 F.3d at 540. If the nonmovant fails to make a sufficient showing to prove the existence of an essential element to the case and on which the nonmovant will bear the burden of proving at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322.

### III. Applicable Law

"Under Texas law, there is a duty on the part of the insurer to deal fairly and in good faith with an insured in the processing of claims." *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997)(citing *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987)). In asserting a common law bad faith cause of action, the insured must establish that the insurer failed to settle the claim even though it "knew or should have known that it was reasonably clear that the claim was covered." *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 54-55

(Tex. 1997). The court looks to the facts available to the insurer at the time of the denial when determining the reasonableness of the insurer's decision. *Viles v. Sec. Nat'l Ins. Co.*, 788 S.W.2d 566, 567 (Tex. 1990). "Evidence that merely shows a bona fide dispute about the insurer's liability on the contract does not rise to the level of bad faith." *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994).

The statutory bad faith standards mirror the common law standard. "The Texas Insurance Code and the Deceptive Trade Practices Act are in large measure statutory fleshings-out of the already existing common law requirements." *Robinson v. State Farm Fire & Cas. Co.*, 13 F.3d 160, 162 (5th Cir. 1994); *see Higginbotham*, 103 F.3d at 460 ("Texas courts have clearly ruled that these [DTPA and Insurance Code] extra-contractual tort claims require the same predicate for recovery as bad faith causes of action in Texas."). If there is no merit to the bad faith claim, there can be no liability on the statutory claims. *Id.*; *see Tucker v. State Farm Fire & Cas. Co.*, 981 F.Supp. 461, 465 (S.D. Tex. 1997)("Plaintiffs' extra-contractual claims live or die depending on whether Plaintiff's bad-faith claim has any viability.").

IV. Analysis

In his Original Petition, Plaintiff alleges causes of action for breach of contract (the Policy), breach of good faith and fair dealing, violations of the Texas Insurance

Code and the Texas Deceptive Practices Trade Act against Defendant. In its motion, Defendant seeks summary judgment on all of Plaintiff's claims.

Having carefully reviewed the motion, the response, the reply, the supporting appendices, the applicable law, and any relevant portions of the record, the Court **denies** summary judgment as to Plaintiff's breach of contract claim only. The Court may, however, reconsider its ruling before or at trial *sua sponte*. *See Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 171 (5th Cir. 2010)(quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990)("An order denying summary judgment is interlocutory, and leaves the trial court free to 'reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'")).

As for Plaintiff's extra-contractual claims, the Court finds summary judgment must be **granted** in favor of Defendant on these claims. As for the common law bad-faith claim, Plaintiff failed to meet his summary judgment burden. In his response, Plaintiff argues Defendant breached its duty of good faith and fair dealing because it "was reasonably clear that the 2014 Hail Claim was covered" and that there was "no reasonable basis for denying or delaying payment of the claim." But Plaintiff failed to submit competent summary judgment evidence to the Court creating a fact question on this bad faith claim.

To a bad faith cause of action, Plaintiff, as the insured, must establish that Defendant, the insurer, failed to settle Plaintiff's claim even though Defendant "knew or should have known that it was reasonably clear that the claim was covered." *Giles*, 950 S.W.2d at 54-55. Plaintiff claims his submission of two separate supplements and three independent estimates to Defendant, as well as his action of making his vehicle available to Defendant for a re-inspection proves that it "was reasonably clear that the 2014 Hail Claim was covered" and that there was "no reasonable basis for denying or delaying payment of the claim." The Court disagrees.

As for the supplements, Plaintiff characterizes his April 23 letter to Defendant as his first supplement. This letter, from Mr. Robinson, Plaintiff's former attorney, demanded $30,500 from Defendant (less money already paid under the Policy) and included an invoice from Tulsa Investments with no detail or itemization, and the three estimates from the independent body shops as support for Tulsa Investment's estimate. On receiving this letter, Defendant notified Plaintiff in writing of its supplement procedure; any additional repairs must be requested by the body shop itself through a supplement form emailed or faxed to Defendant. Even if the Court were to call this a supplement rather than a demand letter, Plaintiff's April 23 letter did not satisfy Defendant's procedure for requesting a supplement payment for additional repairs. In response, Plaintiff submitted his second supplement, a letter

dated May 20 with the supplement form attached along with a detailed, itemized Repair Order from Tulsa Investment as support for the additional repairs. This Repair Order reflected indicated that "All work were [sic] completed vehicle was delivered to costumer [sic] 05/09/14. Paid in full." All repairs had been made, including the supplemental repairs. Only after learning all repairs, including additional ones, had been completed, the vehicle returned, and the $30,500 balance paid, did Defendant then open an investigation. Plaintiff does not establish how the mere action of submitting the supplements, in this case, establishes that Defendant "knew or should have known that it was reasonably clear that the claim was covered." *See Giles*, 950 S.W.2d at 54-55. Plaintiff sought a supplement to Defendant's $5,818.19 estimate which totaled $24,581.81 (less Plaintiff's $100.00 deductible). Plaintiff testified in his deposition that he understood Defendant had to be contacted before Plaintiff authorized any additional repairs to be made. Yet, the summary judgment evidence, including that submitted by Plaintiff, establishes that all repairs were completed before Defendant had re-inspected the vehicle. Plaintiff fails to explain how this alone does not defeat his claim that Defendant knew or should have known that is was reasonably clear the additional damage claimed was covered under the Policy. *See Viles*, 788 S.W.2d at 567 (reasonableness of the insurer's decision turns on facts available to insurer at time of denial).

Plaintiff also argues that he made the vehicle available to Defendant for a second repair and estimate, but Defendant never responded to him. Plaintiff claims there was no reasonable basis for Defendant ignoring his phone calls and failing to inspect the vehicle again when he made it available, and then to delay and deny payment for the additional repairs, and that, therefore, evidences bad faith. The Court finds this argument is without merit. The only evidence supporting Plaintiff's claim that he made the vehicle available is his own deposition testimony. "[I]t is well settled that self-serving 'affidavit or deposition testimony setting forth ultimate or conclusory facts . . . are insufficient to defeat a motion for summary judgment.'" *Garrison Prop. & Cas. Co. v. Silva*, No. 15-60757, 2016 WL 3227314, at *2, --- Fed. Appx. --- (5th Cir. June 10, 2016)(quoting *Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997)). There is no other evidence corroborating Plaintiff's statement that he made the vehicle available to Defendant for re-inspection. There is, however, deposition testimony from the man who actually repaired Plaintiff's vehicle (not Mr. Kennedy) that once he received the vehicle in April to begin repairs, it never left his facility and no one ever came to look at or inspect the vehicle except once to look at the windows. Furthermore, Plaintiff presents no evidence that he made the vehicle available for re-inspection prior to the repairs being made. Even Plaintiff's own

deposition testimony, his only support for his contention he made the vehicle available, is vague as to the timing of this availability for re-inspection.

Even taken in the light most favorable to Plaintiff, the summary judgment evidence does not establish a genuine issue of material fact that it was reasonably clear the additional repairs were covered under the Policy and that Defendant did not have a reasonable basis for delaying or denying payment. *See Giles*, 950 S.W.2d at 54-55 (for bad faith claim, insured must establish that insurer failed to settle the claim even though it "knew or should have known that it was reasonably clear that the claim was covered."); *see also Viles*, 788 S.W.2d at 567 (to determine reasonableness of insurer's decision, court looks to facts insurer had at time it denied claim).

A bad faith cause of action cannot be established by evidence that simply shows there is a bona fide dispute about the insurer's liability on the insurance contract. *Moriel*, 879 S.W.2d at 17. Plaintiff failed to present any summary judgment evidence that this is something more than a bona fide dispute as to coverage of Plaintiff's supplement claim under the Policy. Taken in the light most favorable to Plaintiff, the summary judgment evidence tends to prove that this indeed is simply a bona fide dispute as to whether these additional repairs were caused by the Hail Storm and covered under the Policy. Defendant estimated repair costs for damage to Plaintiff's

vehicle that Defendant determined was caused by the 2014 Hail Storm and was covered under the Policy. Unsatisfied with Defendant's estimate, Plaintiff secured four other estimates and submitted those to Defendant along with his demand that Defendant pay an additional $30,500 (less payments already made) to cover these repair costs. Defendant notified Plaintiff of the process to seek a supplement. Defendant began its investigation upon learning that the vehicle had been repaired, including additional repairs, and returned to Plaintiff before Defendant could re-inspect the vehicle. The summary judgment evidence does not establish a genuine issue of material fact that this is anything other than a bona fide coverage dispute. "Evidence that merely shows a bona fide dispute about the insurer's liability on the contract does not rise to the level of bad faith." *Moriel*, 879 S.W.2d at 17.

The evidence in the summary judgment record must be "such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor." *Little*, 37 F.3d at 1075. The summary judgment evidence in this case could not allow a reasonable jury to find for Plaintiff on his extra-contractual claims of common law bad faith. The Court finds that summary judgment on Plaintiff's common law bad faith claim must be granted.

If there is no merit to the Plaintiff's common law bad faith claim, there can be no liability on the statutory bad faith claims based on the Insurance Code and the

DTPA. *See Higginbotham*, 103 F.3d at 460; *see also Tucker*, 981 F.Supp. at 465 ("Plaintiffs' extra-contractual claims live or die depending on whether Plaintiff's bad-faith claim has any viability."). The Court has determined Plaintiff's common law bad faith claim is not viable, therefore summary judgment is appropriate on Plaintiff's statutory bad faith claims under the Texas Insurance Code and DTPA.

V.  **Conclusion**

The Court **denies** Plaintiff's motion for summary judgment in its entirety. The Court **denies** Defendant's motion for summary judgment on Plaintiff's breach of contract claim. The Court **grants** Defendant's motion for summary judgment on Plaintiff's extra-contractual claims of common law breach of good faith and fair dealing and state statutory violations of the Insurance Code and DTPA.

**SO ORDERED.**

Signed October 25th, 2016.

*Ed Kinkeade*
ED KINKEADE
UNITED STATES DISTRICT JUDGE